**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DUK BAHUDAR POUDEL, | ) | CASE NO. 1:20-CV-1246 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| Defendant. | ) | **AND ORDER** |
| | ) | |

Plaintiff, Duk Bahudar Poudel ("Plaintiff" or "Poudel"), challenges the final decision of

Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying his

application for Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42

U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the

reasons set forth below, the Commissioner's final decision is VACATED and REMANDED

FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION.

---

[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

# I. PROCEDURAL HISTORY

On September 14, 2017, Poudel filed an application for SSI, alleging a disability onset date of December 9, 2009, and claiming he was disabled due to left leg issues, depression, anxiety, sleep issues, shingles, and stomach issues. (Transcript ("Tr.") at 178, 244-50.) The applications were denied initially and upon reconsideration, and Poudel requested a hearing before an administrative law judge ("ALJ"). (Tr. 107-9.) On March 13, 2019 , an ALJ held a hearing, during which Poudel, represented by counsel, and an impartial vocational expert ("VE") testified. (Tr. 40-67.) On April 2, 2019, the ALJ issued a written decision finding Poudel was not disabled. (Tr. 91-110.) The ALJ's decision became final on April 13, 2020, when the Appeals Council declined further review. (Tr. 1-6.)

On June 7, 2020, Poudel filed his Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos.14, 17.) Poudel asserts the following assignments of error:

(1)    The ALJ's residual functional capacity determination is not supported by substantial evidence.

(2)    The ALJ erred in asserting that the opinion of a non-medical expert need not be considered under the regulations.

(3)    The ALJ failed to properly evaluate Mr. Poudel's medical impairments under Medical Listing 1.02A, and, as a result, the decision is not supported by the facts, the law, or substantial evidence.

(Doc. No. 14 at 5, 10, 12.)

## II.   EVIDENCE

**A.   Personal and Vocational Evidence**

Poudel was born in 1972 and was 37 years-old on his alleged disability onset date and 45 years old on the date of his application, making him a "younger" individual age 45-49 under social security regulations. (Tr. 20.) *See* 20 C.F.R. §§ 404.1563 & 416.963.  He has at least a high school education and is able to communicate in English. (*Id.*)  He has past relevant work as a yard worker. (Tr. 45-6.)

**B.   Relevant Medical Evidence[2]**

**1.   Mental Impairments**

On March 8, 2018, consultative examining psychologist, April Sobieralski, Ph.D., evaluated Poudel. (Tr. 541-46.) Dr. Sobieralski observed Poudel was able to converse appropriately, although he needed some questions repeated and rephrased due to English as a second language, which made it "difficult to assess his receptive language skills." (*Id*. at 544, 546.)  On examination, Poudel was alert, responsive and oriented in all spheres. (*Id*. at 544.)  He showed no signs of easy distractibility, but was unable to recall any digits forward or backward or calculate serial sevens or serial threes, recalled one of three words after a brief delay, stated there were 40 seconds in a minute, was able to name only one city when asked to name three, and did not attempt any abstract reasoning questions. (*Id*. at 544-46.)   Dr. Sobieralski noted he had difficulty with interest and motivation persisting on mental status tasks. (*Id*.)  She also noted flat affect and low mood, and reports of irritability, isolation, low motivation, hopelessness, and worthlessness. (*Id*.)  She diagnosed him

---

[2]     The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs.

with adjustment disorder with mixed anxiety and depressed mood, and unspecified trauma or stressor related disorder. (*Id*. at 545.)

On December 7, 2018, Mark Anderson, M.S., CDMS, LPC , issued a vocational assessment of Poudel. (*Id*. at 657-64.) He concluded that besides the "well documented" exertional limitations that prevented Poudel from returning to employment as a yardworker, testing revealed the following significant non-exertional limitations:

- reading aptitude and proficiency below first grade level;

- math aptitude below third grade level;

- arithmetic proficiency below first grade level;

- clerical aptitude below the first percentile;

- "very little ability" to read and write in English; and

- memory loss and poor concentration caused by side effects of his pain medication.

(*Id*.) He opined these limitations made Poudel "non-employable in the local, state or national economies." (*Id*. at 662.)

## 2. Physical Impairments

On December 19, 2009, while working as a yard worker, Poudel fell off of a tow motor, which ran over his left foot and ankle. (*Id*. at 273, 643.) Poudel suffered multiple displaced fractures in his left ankle. (*Id*. at 643, 461-2.) He was put in a cast but continued to experience pain, swelling, and limited range of motion. (*Id*. at 643, 456, 444, 349-50.) He went through several casts and remained non-weightbearing on his left foot. (*Id*. at 728, 344-5.)

In March and April 2010, Poudel underwent physical therapy, and was eventually able to bear weight, although he experienced increased pain while weightbearing. (*Id*. at 728, 331, 327-43.)

On May 25, 2010, Poudel was diagnosed with severe, diffuse ostopenia of his left foot. (*Id*. at 442-3.) He continued to experience aching, dull pain in his left ankle. (*Id*. at 324.) On examination, Dr. Alan Davis noted mild swelling of the ankle joint, and no tenderness, but noted Poudel "[s]till has a significant way to go with respect to strength and proprioception, independent ambulation and endurance." (*Id*. at 325.)

On December 9, 2010, Poudel underwent a fusion in his left foot, and was again non-weightbearing on his left foot for 3 or 4 months, after which he received additional physical therapy. (*Id*. at 643, 320-1.)

In May 2011 Poudel underwent a second surgery to remove the internal fixation in his left foot. (*Id*. at 643, 316.) After this surgery, Poudel attended physical therapy; was prescribed a hinged brace for his ankle; and received two injections in his left foot/ankle. (*Id*.)

On June 19, 2012, an MRI of Poudel's left foot and ankle showed incomplete osseous joint fusion, with a small amount of fluid within the residual joint space, and mild degenerative changes. (*Id*. at 405.)

On November 16, 2012, Poudel established care with Dr. Todd Hochman. (*Id*. at 273.) On examination, Dr. Hochman noted "quite a bit of discomfort inferior to the left lateral malleous," as well as numbness and limited range of motion and weakness in all planes. (*Id*. at 274.) Dr. Hochman opined that Poudel was limited to sedentary duty work. (*Id*.)

In January 2017, x-rays of Poudel's left foot showed bony fusion of the anterior aspect of the calcaneus and cuboid; mild degenerative changes in the midfoot; and persistent soft tissue swelling. (*Id*. at 276, 645-46.)

In February 2017, a CT scan of Poudel's left foot in February 2017 showed fracture of the calcaneus had healed;  fusion of the calcaneus and cuboid was complete; the ankle joint was intact; and there was osteoporosis. (*Id*. at 646.)

On August 30, 2017, Dr. Hochman examined Poudel, who reported pain if he ambulated, walked, or stood "too long." (*Id*. at 252.)  Weather changes did not help, and his medication took the "edge off." (*Id*.) On examination, Poudel was alert and in moderate discomfort. Dr. Hochman noted ankle swelling, more medial than lateral discomfort, crepitus with limited range of motion, antalgic gait, no dependent edema, and a negative Homan's sign. (*Id*.)  Dr. Hochman continued Cymbalta prescribed by Poudel's outpatient mental health physician, and Poudel's self-directed home exercise program.  (*Id*.)

On November 27, 2017, Dr. Hochman examined Poudel, noting swelling and moderate to moderately severe discomfort in his ankle, crepitus with a limited range of motion, weakness and antalgic gait.  (*Id*. at 251.)

On October 16, 2018, Sheldon Kaffen, M.D. conducted a disability evaluation for the Ohio Industrial Commission.  (*Id*. at 643-48.)  Dr. Kaffen noted significant generalized swelling and diminished sensation in Poudel's left foot and ankle, and Poudel reported pain with attempted motion. (*Id*. at 645.)  Dr. Kaffen observed Poudel walked with a severe limp, and opined that Poudel had the following limitations:

> Significant restrictions in weightbearing activities, i.e., standing, walking, climbing due to his constant pain and swelling of his left foot and limitation of motion. He has no difficulty using his upper extremities while sitting. He is able to type, talk and write. He is able to push and pull while sitting up to 10 to 15 pounds. He is able to drive. He is unable to perform any housework or yard work because they require weightbearing. He requires balance for bathing, dressing, and undressing, i.e., sitting or holding on to a fixed object.

(*Id*. at 647.)  He also opined Poudel should be limited to sedentary work with "no standing to lift, sitting 80% to 90% of the time."  (*Id*. at 645, 648.)

On December 28, 2018, Poudel returned to Dr. Hochman for treatment of his ankle pain. (*Id*. at 649.)  On examination, he was alert, in moderate discomfort, had tenderness about the ankle and in his lumbar spine, and more medial discomfort, crepitus and an antalgic gait. (*Id*.)  Poudel reported that Cymbalta was "helping some" with the pain and Dr. Hochman thought it could be titrated up. (*Id*.)  Dr. Hochman told Poudel to continue with the home stretching and exercises.

## C.    State Agency Reports

### 1.    Mental Impairments

On March 14, 2018, State agency reviewing psychologist Paul Tangeman  reviewed the record and opined that Poudel had the following limitations to his physical residual functional capacity ("RFC") as result on non-severe mental impairments:

- mild limitations in understanding, remembering and applying information;

- mild limitation in interacting with others;

- mild limitations in concentrating, persisting or maintaining pace; and

- mild limitations in adapting or managing himself.

(Tr. 74-5.)

On May 29, 2018, State agency reviewing psychologist Leslie Rudy, Ph.D., reviewed the record and concurred with the opinion of Dr. Tangeman.  (*Id*. at 87-8.)

### 2.    Physical Impairments

On February 15, 2018, State agency reviewing physician William Boltz, M.D., reviewed the record and opined that Poudel had the following limitations to his physical RFC:

- occasionally lift or carry 20 pounds;

- frequently lift or carry 10 pounds;

- stand or walk with normal breaks for 2 hours;

- sit with normal breaks for 6 hours in an 8 hour workday;

- occasionally climb ramps and stairs;

- frequently balance;

- never climb ladders, ropes, or scaffolds; and

- occasionally kneel, crouch and crawl.

(Tr. 76-78.)

On May 25, 2018, State agency reviewing physician Maria Congbalay, M.D., reviewed the record and concurred with the opinion of Dr. Boltz. (*Id*. at 89-91.)

## D. Hearing Testimony

During the March 13, 2019 hearing, Poudel testified to the following:

- He was able to read and write in English well enough to take classes in that language when he lived in India. After completing high school, he studied at home and took an exam.[3] He did not pass. After his accident, headaches and concentration problems have made it very difficult to read and write. (Tr. 44-5.)

- He last worked for five months in 2009, as a yard worker. He lifted more than 100 pounds. He stopped working when his leg was badly injured. (*Id*. at 46.)

- He received worker's compensation until last year. (*Id*.)

- He has had surgery on has left foot and ankle twice, but still has a lot of pain, numbness, and burning. This causes sleep problems. (*Id*. at 47.)

---

[3]    It is unclear whether this was a collegiate exam or the exam for his secondary school certificate.

8

- He wears a brace on his ankle at all times except when he is sleeping. He has had this brace snce about 2014. Before that, he had other braces. (*Id*. at 47-8.)

- He can't walk more than 5 minutes. He can stand from two or three minutes. He cannot sit comfortably because his legs falls asleep, which is a tingling feeling that is very heavy, after about five minutes. He needs to elevate his leg for three or four minutes every five or ten minutes. (*Id*. at 48-9.)

- In 2015, he developed arthritis in his leg, which caused sleeping problems. He sleeps only two or three hours at night, and one or two hours during the day. This led to headaches, concentration problems, and difficulty remembering things. (*Id*. at 49-50.)

- He can't remember "what is happening since after a few hours later," or how to spell words. (*Id*. at 51.)

- He speaks Nepali at home. He does not speak Hindi. His kids speak a little English, but he only speaks Nepali. (*Id*. at 51-2.)

- He is depressed because of his pain. He doesn't like to eat. He gets agitation when people speak too much. He gets angry. He has emotional problems. (*Id*. at 52.)

- In India, he studied English, social studies, economics, and political science. (*Id*. at 53.)

- He lives with his wife and four sons, who are ages 24, 16, 9 and 5. His wife and oldest son work to support the family. (*Id*.)

- He cannot help with chores around the house because he cannot stand or climb stairs. His wife helps him dress because he cannot balance. He showers sitting down. (*Id*. at 54.)

- He cannot drive. Someone else drove him to the hearing. (*Id*. at 56.)

- He can lift only five pounds because of pain in his leg. (*Id*.)

- He went to an unaccredited college in India for over four years, but did not attend full time or in person. He studied using books sent to him at home and took exams in English. (*Id*. at 57-8.)

The VE testified Poudel had past work as a yard worker. (*Id*. at 59.) The ALJ then posed

the following hypothetical question:

> I'd like to assume an individual who is 46 years old. He attended college    he
> participated in college level courses in India in English. Therefore, although English
> is his second language, I find that he can read, write, speak, and understand simple
> English. This individual is limited to work of sedentary exertional requirements with
> additional non-exertional limitations. Specifically, no climbing of ladders, ropes or
> scaffolds. Occasional climbing of ramps and stairs, balancing, stooping, kneeling,
> crouching, and crawling. No exposure to hazards such as heights, machinery,
> commercial driving. And mental limitation that h perform routine tasks in a low
> stress environment. No past [sic] paced production quotas or frequent duty changes
> involving superficial interpersonal interactions. So he can't do past work, correct?

(*Id.*)

The VE testified the hypothetical individual would not be able to perform Poudel's past work

as yard worker. (*Id.*) The VE explained the hypothetical individual would be able to perform other

representative jobs in the economy, such as table worker, document preparer, mailing house worker.

(*Id*. at 60.)

The ALJ proposed a second hypothetical, assuming the same parameters as the first

hypothetical and adding the limitation that the hypothetical individual would be off task at least 20%

of the time due to the symptoms of a medically determinable impairment. (*Id*. at 61.) The VE

testified that this would preclude competitive employment. (*Id.*)

Poudel's counsel asked whether adding the requirement that the hypothetical individual be

able to elevate his left leg two or three times a day for 15 minutes would change any of the VE's

answers. (*Id*. at 62.) The VE testified his answers would remain the same. (*Id.*) However, the need

to elevate his leg above his chest, in a fully reclined position, would preclude competitive

employment. (*Id.*)

Poudel's counsel also asked whether amending the hypothetical to include the requirement

that the hypothetical individual be able to change positions every ten minutes would change the

VE's answers. (*Id*. at 63.) The VE testified that, although the Dictionary of Occupational Titles does not address the frequency of cycling, in his opinion, this would make an individual insufficiently productive to maintain competitive employment. (*Id*.)

Finally, the VE testified that reading below a first grade level would be illiterate, and all the jobs he identified require someone to be literate. (*Id*. at 66.)

### III.    STANDARD FOR DISABILITY

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec*., 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) & 416.920(b). Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience. *See* 20 C.F.R. §§ 404.1520(d) & 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the

claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), & 416.920(g).

A disabled claimant may be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since September 14, 2017, the application date.

2.  The claimant has the following severe impairments: degenerative arthritis of the left foot and ankle, status post remote fractures; major depressive disorder; and post-traumatic stress disorder.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except for no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that he perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation or confrontation).

5.  The claimant is unable to perform past relevant work.

6.  The claimant was born on March **, 1972, and was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed.

7.  The claimant has at least a high school education and is able to communicate in English.

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 14, 2017, the date the application was filed.

(Tr. 12-21) (internal citations omitted).

## V. STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not

13

subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.  Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); *accord Shrader v. Astrue*, No. 11  13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.");

14

*McHugh v. Astrue*, No. 1:10 cv 734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10 CV 017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09 cv 1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

### A.      Determination of Residual Functional Capacity

Poudel asserts that the ALJ's RFC is not supported by substantial evidence. (Doc. No. 14 at 5.) He argues the ALJ's determination of his physical RFC erroneously discounted the substantial evidence supporting his inability to perform the standing and walking required to perform even sedentary work, and the determination of his mental RFC does not adequately account for his limitations in concentration, persistence, and pace. (*Id.* at 6.)

The Commissioner responds that the ALJ properly considered all the evidence, and adopted an RFC that is supported by substantial evidence. (Doc. No. 17 at 5-9.)

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* 20 C.F.R. § 416.945(a). A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(2). An ALJ "will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *See* 20 C.F.R. § 416.927(d)(3). The ALJ bears the responsibility for assessing a claimant's RFC based on all of the relevant evidence, and must consider all of a claimant's medically determinable impairments, both individually and in combination.

"In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d

875, 880 (N.D. Ohio 2011), citing *Bryan v. Comm'r of Soc. Sec.*, 383 F. App'x 140, 148 (3d Cir. 2010) ("The ALJ has an obligation to 'consider all evidence before him' when he 'mak[es] a residual functional capacity determination,' and must also 'mention or refute [...] contradictory, objective medical evidence' presented to him."). *See also* SSR 96 8p, at *7, 1996 SSR LEXIS 5, *20 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

However, it is well established there is no requirement that the ALJ discuss each piece of evidence or limitation considered. *See, e.g., Conner v. Comm'r*, No. 16 5175, 2016 WL 4150919, at *6 (6th Cir. Aug. 5, 2016) citing *Thacker v. Comm'r*, 99 F. App'x 661, 665 (6th Cir. May 21, 2004) (finding an ALJ need not discuss every piece of evidence in the record); *Arthur v. Colvin,* No. 3:16CV765, 2017 WL 784563, at *14 (N.D. Ohio Feb. 28, 2017) (accord). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, No. 04 5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) , quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) . In sum, and as another court within this District explained, "an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence." *Vaden v. Berryhill*, No. 1:17CV1656, 2018 WL 4052149 at * 4 (N.D. Ohio Aug. 24, 2018), citing 20 C.F.R. § 404.1545(a)(2); *Thacker,* 99 F. App'x at 665. *See also Hardman v. Berryhill*, 5:16CV2795, 2018 WL 1545707 at *15 (N.D. Ohio March 15, 2018).

Here, at step two, the ALJ determined Poudel had severe impairments of degenerative arthritis of the left foot and ankle, status post remote fractures; major depressive disorder; and post-traumatic stress disorder. (Tr. 12.) He adopted a determination of RFC which contained accommodations for both Poudel's physical and mental impairments:

> the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a), except for no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards (heights, machinery, commercial driving); and mental limitation that he perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation or confrontation).

(Tr. 14-15.) These will be discussed separately, below.

### i. Physical RFC

First, Poudel asserts that RFC is not an accurate representation of his limitations or the record evidence because the ALJ failed to fully address his limited ability to stand and walk and his frequent need to elevate his left leg throughout the day. (Doc. No. 14 at 6.) He notes that his worker's compensation evaluator, Dr. Keffen, opined that he should be limited to sedentary work with "no standing to lift, sitting 80% to 90% of the time," and argues this is consistent with record evidence which "consistently documents left ankle pain, swelling, numbness, and weakness; difficulty with ambulation; pain if he ambulates too long; limitations with range of motion which include dorsiflexion, inversion, eversion, and plantar flexion; neuropathy and abnormal gait." (*Id.* at 7.)

The ALJ explicitly addressed Poudel's left ankle and foot impairments, and considered the evidence cited by Poudel. The ALJ found Dr. Keffen's opinion "persuasive" because it was "supported by the objective medical evidence and consistent with the course of treatment during the

17

relevant timeframe," and Poudel does not identify any meaningful disparities between Dr. Keffen's opinion, and the physical RFC determination adopted by the ALJ. (Tr. 18.) Like Dr. Keffen, the ALJ limited Poudel to sedentary work.[4] Poudel offers no basis to conclude that Dr. Keffen's limitation to "sitting 80% to 90%" of the workday is a greater limitation than the "occasional" amount of walking and standing in sedentary work. The VE addressed this issue, explaining the jobs he identified were "basically sit-down jobs." (*Id*. at 64.) The VE also explained that he was identifying jobs "that just don't require hardly any lifting at all," so the distinction between the ability to lift 10 pounds, as specified in the definition of sedentary work, or 5 pounds, as specified in Dr. Keffen's opinion, would not change the disability analysis. (*Id*. at 63.)

Poudel focuses his argument on the assertion that he needs to periodically elevate his foot 2 or 3 times a day for 15 minutes to control the swelling in his lower extremity, even when sitting. (Doc. No. 14 at 7.) The VE testified that elevating his foot in this manner would not affect the disability analysis unless Poudel needed to be in a fully reclined position, would preclude competitive employment. (Tr. 62.) Neither Dr. Keffen nor any other medical record supports the assertion that Poudel needed fully recline to lift his leg above his heart multiple times a day. Even Poudel's testimony on that subject did not assert such a limitation:

---

[4]    Sedentary work is defined in the Code of Federal Regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR 404.1567.

Q:      Do you have problems sitting?

A:      Yes, even I cannot lay down my leg it's always sleeping.  My leg's sleeping right now it lay down

Q:      It falls asleep?

A:      Yeah, it falls asleep.

Q:      Ok, so is it tingling them?

A:      Tingling become very heavy.  Now it's

Q:      Okay.

A:        like right now.

Q:      And that happens if you sit for five minutes?

A:      Yes

Q:      Okay.

A:        by   so I need to elevate it, leg elevation.

Q:      How often are you elevating that leg?

A:      Every five minutes, ten minutes.

Q:      When you're sitting?

A:      Yes.

Q:      And how long do you have to elevate it for?

A:      Three, four minutes.

(*Id*. at 48-9.)  Thus, the court finds no evidentiary support for the assertion that Poudel needs to fully recline in order to accommodate his leg impairment.

The ALJ supported his physical RFC determination with substantial evidence.  Further, because the VE testified that Poudel's other proposed limitations   lifting 5 pounds instead of 10,

19

elevating his foot 2 or 3 times a day for 15 minutes, and sitting 80% of the workday    would not affect the disability analysis.  (*Id*. at 62, 64.)  Therefore, the Court finds that even if the ALJ erroneously omitted these limitations, these would be harmless errors.

ii.    **Mental RFC**

Poudel also asserts that the ALJ failed to properly account for his limitations in concentration, persistence, and pace, and therefore the ALJ's determination of Poudel's mental RFC is not supported by substantial evidence.  (Doc. No. 14 at 8.)  Poudel notes that both the opinions of consultative examiner Dr. Sobieralski and VE Anderson indicated that he was significantly limited in his ability to maintain concentration, persistence, and pace.[5]  (*Id*.)  He argues these limitations were not adequately incorporated into the questions posed to the VE, and, ultimately, into the mental RFC determination.  (*Id*. at 9.)

Dr. Sobieralski's opinion noted that she observed Poudel to be alert, responsive and oriented in all spheres.  (Tr. 544.)  He was unable to recall any digits forward or backward or calculate serial sevens or serial threes, recalled one of three words after a brief delay, stated there were 40 seconds in a minute, was able to name only one city when asked to name three, and did not attempt any abstract reasoning questions.  (*Id*. at 544-46.)   Dr. Sobieralski noted Poudel had difficulty with interest and motivation persisting on mental status tasks.  (*Id*.)  The ALJ explained he found "Dr. Sobieralski's medical opinion ... only somewhat persuasive because she often simply reiterated what the claimant told her as opposed to providing her own professional opinion."  (*Id*.

---

[5]    The opinion of vocational expert Anderson is discussed in greater detail in the following section.  It is not dispositive here because, as explained *supra*, the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001)

at 17.)  The ALJ did not specify which portions of the opinion he found unpersuasive, but this rationale seems inapplicable to the results of the cognitive testing at issue here.  However, Dr. Sobieralski's opinion was internally inconsistent on the issue of effort.  She noted both that "he appeared to put forth this best effort," and "He put forth minimal effort on mental status tasks."  (*Id*. at 544, 545.)  She also noted "Mr. Poudel stated he had difficulty understanding directions because of his memory," yet he was "easily able to follow conversations and showed no signs of easy distractibility."  (*Id*. at 546.)

Although it would have been helpful for the ALJ to more throughly explain his treatment of Dr. Sobieralski's opinion, the report itself states that "It is difficult to assess Poudel's level of intelligence given his difficulty with English [and] minimal effort on mental status tasks."  (*Id*. at 544-5.)  The Court notes that, based on the extensive self-reporting described in Dr. Sobieralski's opinion, Poudel appears to have been able to understand her questions and respond appropriately, recalling a significant amount of details about his personal history. Because Dr. Sobieralski expressed doubt about the reliability of the cognitive testing she administered, it would be perverse for this Court to require that the ALJ rely on it.  Further, as the ALJ noted, Poudel does not appear to have raised concerns about memory, concentration, persistence or maintaining pace with his psychiatric care providers.  (*Id*. at 13, 14.)

That is not to say that it would have been appropriate for the ALJ to disregard Poudel's mental impairments.  However, the ALJ did not do so.  Although he found "persuasive" the March and May 2018 opinions of the State agency reviewing psychologists, who found that Poudel suffered from no severe mental health limitations, the ALJ nevertheless deemed Poudel's depression and PTSD "severe" and accommodated Poudel's mental impairments with the limitations to "routine

tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions (no arbitration, negotiation or confrontation)." (*Id*. at 15.) Psychological and vocational testing is neither routine nor low-stress, and Poudel points to no record evidence indicating he was incapable of routine tasks in a low stress environment, or required additional limitations to repetition of directions, or only visual demonstration directions, as he suggests. In contrast, the ALJ analyzed the opinion evidence at issue here, and also pointed to Poudel's conservative course of treatment, and the lack of evidence that he raised these issues with his mental healthcare providers. (*Id*. at 13-14.) Therefore, this assignment of error is without merit.

**B.       Opinion of Vocational Expert Anderson**

Poudel asserts the ALJ erred by disregarding the report and opinion of vocational expert Anderson. He asserts that, because VE Anderson is certified in his profession and considered an expert within his field, he should be considered a "nonmedical" expert and his report, including his opinion, should be evaluated. (Doc. No. 14 at 10.)

The ALJ did not address the substance of vocational expert Anderson's report and opinion, explaining: "The undersigned specifically rejects the vocational opinion of Mark Anderson, as it is based on functional restrictions that are not supported by medical evidence. Furthermore, this is a nonmedical source opinion that the undersigned need not consider under 20 CFR 416.920c." (Tr. 19-20.) The Commissioner acknowledges that the ALJ's statement that he "need not consider" nonmedical evidence under 20 CFR 416.920c is a mis-statement of the law. (Doc. No. 17 at 9.) The regulation cited by the ALJ addresses medical opinion evidence, and explains, "We are not required to articulate how we considered evidence from nonmedical sources using the requirements

... in this section." 20 CFR 416.920c. However, this does not exempt the ALJ from considering the evidence at all.

The Commissioner argues that the ALJ's explanation that he is rejecting VE Anderson's opinion because it is "based on functional restrictions that are not supported by medical evidence" is a valid, independent basis for rejecting the opinion that renders the error of law harmless. (Doc. No. 17 at 10.) He also asserts that the mention of VE Anderson's opinion in the decision, as well as discussion of it at the hearing, demonstrate that the ALJ did, in fact, consider the evidence. (*Id.*) Both these arguments are unpersuasive.

First, Anderson, a licensed professional counselor and diplomate of the American Board of Vocational Experts, is indisputably not an "acceptable medical source." *See Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838, n.9 (6th Cir. 2016) ("According to Social Security Ruling 06‑03p, [ ] a licensed clinical social worker is not an acceptable medical source") (internal quotation marks omitted). However, an ALJ still must explain the weight given to "other sources" such as licensed professional counselors. *See* SSR 06-03P, 2006 WL 2329939, at *6 ("...the adjudicator generally should explain the weight given to opinions from ... "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.").

The Court notes that discussion of VE Anderson's report at the hearing was limited to a contentious exchange between the ALJ and Poudel's counsel regarding VE Anderson's credentials:

ATTY:   [O]ne of the limitations given by a doctor reviewing the case for worker's comp was math aptitude below third-grade level, reading aptitude below first-grade level.

ALJ:    What doctor are you talking about?

ATTY:   Dr. Anderson in

ALJ:    Dr. Anderson's not a doctor.

ATTY:   in 11F.

ALJ:    He's a vocational person he doesn't have a    PhD

ATTY:   Okay. So

ALJ:    he holds a master's degree.  And incidentally, in accordance with 20 CFR 416.920c I am not bound by non-medical opinions.  And Mr. Anderson ... is providing a non-medical opinion.

ATTY:   I appreciate that.

(Tr. 65.)  When Poudel's counsel persisted in asking the VE a hypothetical based on the limitations in VE Anderson's opinion, the ALJ reiterated his position, explaining, "For the record, I'm not accepting the parameters of your hypothetical."  (*Id.* at 66.)  Poudel's counsel insisted "I'm still allowed to ask it," and the ALJ responded "I guess."  (*Id.*)

This exchange does not provide a basis to conclude that the ALJ gave any consideration the substance of VE Anderson's non-medical opinion.  Further, the limitations contained in that opinion may have an effect on the outcome of the case, as VE Anderson opined Poudel is functionally illiterate in English and innumerate.  (Tr. 662.)  These are not medical conditions, but are certainly relevant to the ALJ's determination that Poudel "can speak, understand, read and write simple English."[6]  (Tr. 20.)  Further, the ALJ's brief statement that he rejected VE Anderson's report

----

[6]     The Court notes that the ALJ bases this assessment on Poudel's successful completion of high school and correspondence college coursework in India.  This work was all completed in 2004. (Tr. 659.)  There is significant evidence that Poudel's literacy has declined in the ensuing 17 years, and the ALJ identifies no evidence of English literacy during the relevant period.

because it is "based on functional restrictions that are not supported by medical evidence" is insufficient to assure the Court that the ALJ actually considered the substance of VE Anderson's report. VE Anderson explained his opinions were based on the results of testing he administered, and his conclusions are consistent with the findings of Dr. Sobieralski, who found Poudel incapable of basic arithmetic tasks such as skip counting.

It is well-settled that an ALJ's failure to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.") In this case, the ALJ mis-stated the law, and then failed to explain his treatment of the evidence with sufficient specificity to allow the Court to determine whether he rejected the evidence based on the content of the report or his misapprehension of the law. Therefore, this case will be remanded in order to provide the opportunity to evaluate the report and opinion of VE Anderson in accordance with the appropriate Social Security Regulations.

## C.       Listing 1.02(A)

Poudel asserts that the ALJ erred by failing to properly evaluate his medical impairments under the regulations. As a result, Poudel argues the ALJ provided an incomplete analysis of his severe impairments, and erroneously concluded that his impairments did not meet and/or equal the requirements of Listing 1.02A. (Doc. No. 14 at 13.)

At the third step in the disability evaluation process, a claimant will be found disabled if her impairment meets or equals one of the Listing of Impairments. *See* 20 C.F.R. §§

404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). Essentially, a claimant who meets the requirements of a Listed Impairment, as well as the durational requirement, will be deemed conclusively disabled and entitled to benefits.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3). It is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *See e.g. Lett v. Colvin*, 2015 WL 853425 at * 15 (N.D. Ohio Feb. 26, 2015). A claimant must satisfy all of the criteria to "meet" the listing. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A claimant is also disabled if her impairment is the medical equivalent of a listing, 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5), which means it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

Where the record raises a "substantial question" as to whether a claimant could qualify as disabled under a listing, an ALJ must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414-15 (6th Cir. 2011). In order to conduct a meaningful review, the ALJ must make sufficiently clear the reasons

for her decision. *Id.* at 416-17. *See also Harvey v. Comm'r of Soc. Sec.*, 2017 WL 4216585 at * 5 (6th Cir. March 6, 2017) ("In assessing whether a claimant meets a Listing, the ALJ must 'actually evaluate the evidence,' compare it to the requirements of the relevant Listing, and provide an 'explained conclusion, in order to facilitate meaningful judicial review.'" (quoting *Reynolds*, 424 F. App'x at 416); *Joseph v. Comm'r of Soc. Sec.*, 2018 WL 3414141 at * 4 (6th Cir. July 13, 2018) (same).

Here, Poudel's challenge to the ALJ's step-three analysis is limited to Listing 1.02, which is defined as follows:

> **1.02 *Major dysfunction of a joint(s) (due to any cause)***: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
>
> OR
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c

20 C.F.R. § 404, Subpt. P, App. 1. Section 1.00B2b states that "ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2b.

At step two, the ALJ determined Poudel suffered from the severe impairments of degenerative arthritis of the left foot and ankle, status post remote fractures; major depressive

disorder; and post-traumatic stress disorder.  (Tr. 12.)  The ALJ then determined, at step three, that Poudel's impairments did not meet or equal Listing 1.02, explaining as follows:

> [T]he undersigned considered the claimant's physical impairments under the requirements of Listing 1.02 regarding the major dysfunction of a joint, but the claimant's requirements do not result in the claimant being extremely limited in the ability to walk as required by 1.00B2b.

(*Id*. at 13.)  Poudel argues that the ALJ was required to make a more in-depth analysis, but points to no record evidence establishing the critical element of  use of a hand-held assistive device that limits the functioning of both upper extremities.  A claimant bears the ultimate burden of establishing disability under the Social Security Act.  *Key v. Comm'r of Soc. Sec.,* 109 F.3d 270, 274 (6th Cir. 1997).  In the absence of any evidence that this essential element of the Listing was met, the ALJ's analysis is sufficient.  This assignment of error is without merit.

## VII.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is VACATED and REMANDED for further consideration consistent with this opinion.  On remand, the ALJ should evaluate the report and opinion of VE Anderson in accordance with the appropriate Social Security Regulations.

**IT IS SO ORDERED.**

    *s/Jonathan D. Greenberg*
Jonathan D. Greenberg
United States Magistrate Judge

Date: July 9, 2021